**\*NOT FOR PUBLICATION\***

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Crim. No. 20-583 (FLW) |
| v. | : | |
| | : | **OPINION** |
| JAMAR M. LEWIS, | : | |
| | : | |
| Defendant. | : | |

**WOLFSON, Chief Judge:**

After Defendant Jamar Lewis ("Defendant") pleaded guilty to a one-count indictment charging him with unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), this Court held a hearing and sentenced Defendant to a term of imprisonment of 42 months, an upward variance of the Guidelines range resulting from his total offense level of 12. As part of Defendant's sentence, I found that Defendant was not subject to a sentencing enhancement for firearms offenses under United States Sentencing Guideline ("U.S.S.G.") § 2K2.1(a)(4)(A), concluding that his prior conviction under New Jersey state law for third-degree possession with intent to distribute marijuana did not qualify as a "controlled substance offense" under the Sentencing Guidelines. During the hearing, I reserved the right to supplement my oral ruling by written opinion. This Opinion serves to supplement my findings on that issue.

### I.    BACKGROUND

On July 14, 2020, Defendant pleaded guilty to one-count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The U.S. Probation Office calculated an advisory sentencing range of 51 to 63 months, based on a total offense level of 17 and Defendant's criminal history category of VI. In calculating Defendant's offense level, the Probation Office applied a base-level

sentencing enhancement under U.S.S.G. § 2K2.1(a)(4)(A) for firearms offenses predicated on Defendant's 2012 New Jersey state conviction for third-degree possession with intent to distribute marijuana.[1]

Following the submission of the Presentence Report, defense counsel advised the Government that Defendant wished to challenge the Probation Office's offense level calculation on the basis that his 2012 marijuana conviction does not qualify as a controlled substance offense under the Guidelines, contrary to the parties' stipulation in the plea agreement dated January 14, 2020.  On May 4, 2021, Defendant and the Government entered into a sentencing agreement in which the parties agreed that Defendant, notwithstanding the stipulations in the plea agreement, could make such an argument without breaching the plea agreement.

On June 2, 2021, the Government submitted a memorandum in support of its position that Defendant's prior state court conviction qualifies as a controlled substance offense under U.S.S.G. § 2K2.1(a)(4)(A).[2]  On June 16, 2021, Defendant submitted a letter brief outlining his position as to the sentence to be imposed and objecting to the Probation Office's Guidelines calculation.  The parties' arguments—in their briefing and at sentencing—focused on whether Defendant's prior state court marijuana conviction was a "controlled substance offense" under U.S.S.G. § 2K2.1(a)(4)(A), which assigns a base offense level of 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense."  The Government argues that this enhancement applies based on

---

[1] Specifically, the Probation Office initially determined Defendant's base offense level to be 20.  *See* U.S.S.G. § 2K2.1(a)(4)(A).  Defendant, however, received a 3-point adjustment for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a), 2E1.1(b), making his total offense level 17.

[2] On June 8, 2021, the Government supplemented its memorandum to highlight the First Circuit's decision in *United States v. Abdulaziz*, 998 F.3d 519 (1st Cir. 2021), which was issued on June 2, 2021.

Defendant's prior conviction of possession with intent to distribute marijuana under N.J.S.A. § 2C:35-5.  Defendant, on the other hand, argues that the enhancement is not appropriate because "the applicable New Jersey statute criminalized more conduct that the current federal [Controlled Substances Act ("CSA")]" and, accordingly, his 2012 marijuana conviction cannot qualify as a predicate offense under U.S.S.G. § 2K2.1(a)(4)(A).  Notably, at the time of Defendant's 2012 conviction, New Jersey criminalized hemp, which is now excluded from the federal definition of marijuana.[3]  *Compare* N.J.S.A. 2C:35-2 (effective March 12, 2003 to November 20, 2018) *with* Agriculture Improvement Act of 2018, Public Law No. 115-334, 132 Stat 4490 (the "2018 Farm Bill").

At sentencing, I determined that Defendant's prior conviction for possession with intent to distribute marijuana was not a "controlled substance offense," and thus Defendant's base offense level was 14.  Taking into account the two-point adjustment for acceptance of responsibility, Defendant's total offense level was 12, which together with his criminal history score, yielded a corresponding Guidelines range of 30 to 37 months.  I imposed a sentence of 42 months, an upwards variance of the advisory Guidelines range for that offense level.

## II.     LEGAL STANDARD

This Court has jurisdiction pursuant to 18 U.S.C. § 3231.  *See United States v. Chapman*, 866 F.3d 129, 131 (3d Cir. 2017).  "In sentencing a defendant, district courts follow a three-step process: At step one, the court calculates the applicable Guideline range, which includes the application of any sentencing enhancements." *United States v. Wright*, 642 F.3d 148, 152 (3d Cir. 2011).  "At step two, the court considers any motions for departure and, if granted, states how the

---

[3]     The 2018 Farm Bill, *inter alia*, amended the CSA's definition of "marihuana" to specifically exclude from its definition "hemp, as defined in section 1639*o* of Title 7." *See* 21 U.S.C. § 802(16)(B)(i).

departure affects the Guidelines calculation. *Id.* "At step three, the court considers the recommended Guidelines range together with the statutory factors listed in 18 U.S.C. § 3553(a) and determines the appropriate sentence, which may vary upward or downward from the range suggested by the Guidelines." *Id.* In calculating the Guidelines sentence, the Third Circuit has "explained that, '[a]s before [*United States v. Booker*, 543 U.S. 220 (2005)], the standard of proof under the Guidelines for sentencing facts continues to be preponderance of the evidence.'" *United States v. Ali*, 508 F.3d 136, 143 (3d Cir. 2007) (first alteration in original) (citation omitted). The Government bears the burden of demonstrating that a sentence should be calculated by using a higher base offense level. *United States v. Howard*, 599 F.3d 269, 271–72 (3d Cir. 2010). The present dispute concerns the applicable Guidelines range at step one, such that the Government bears the burden of demonstrating, by a preponderance of evidence, that Defendant's prior conviction triggers the sentencing enhancement in U.S.S.G. § 2K2.1(a)(4)(A).

### III.    DISCUSSION

According to the Government, Plaintiff's prior state conviction for third-degree possession with intent to distribute marijuana should qualify as a "controlled substance offense" under U.S.S.G. § 2K2.1(a)(4)(A). For the purpose of that section, "controlled substance offense" has the meaning given to that term in U.S.S.G. § 4B1.2(b). Under U.S.S.G. § 4B1.2(b):

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

The Guidelines, however, do not define the term "controlled substance." The parties' arguments center on how that term should be defined. Defendant contends that "controlled substance" should be read as any substance included in the drug schedules set forth in section 802 of the Controlled

4

Substances Act ("CSA"). The Government, on the other hand, argues that the term "controlled substance" should be given its "plain and ordinary meaning." That is, the Government maintains that "either a drug controlled under federal *or* state law suffices for the purposes of the term 'controlled substance.'" (Gov't Br., at 10.)

### a. *The Categorical and Modified Categorical Approaches*

Before turning to these issues, I must first decide the appropriate standard to apply. There are two different standards that courts have employed when evaluating whether a prior conviction constitutes a "controlled substance offense": the categorical approach and the modified categorical approach. *See United States v. Brown*, 765 F.3d 185, 189 (3d Cir. 2014). Generally, in the context of the Sentencing Guidelines "to determine whether a prior conviction qualifies as a . . . controlled substance offense," the court applies a categorical approach.[4] *United States v. Williams*, 323, 333 (3d Cir. 2018) (citing *Taylor v. United States*, 495 U.S. 575, 576–77 (1990)). Under a categorical approach, the court "consider[s] only the elements of the crime of conviction and assess[es] whether they fall within the bounds of a . . . controlled substance offense, as defined under the Guidelines." *Id.* Alternatively, under the "modified categorical approach," a court may look past the elements of the crime to the facts of the case if a state statute is divisible. *Id.* A state statute is

---

[4] The Government nevertheless argues that the categorical approach should not apply here because it would needlessly complicate the Court's inquiry. Plainly, the Government's position is untenable. It is well-established under Third Circuit law that the categorical approach governs the Court's analysis of whether Defendant's state conviction is a "controlled substance offense" under section 4B1.2(b) of the Guidelines. *See, e.g.*, *United States v. Dominguez-Rivera*, 810 F. App'x 110, 112–13 (3d Cir. 2020) ("At issue is whether [defendant's] drug conviction under [Connecticut law] qualifies under U.S.S.G. § 4B1.2(b) as a predicate offense. That determination turns on a 'categorical approach' that examines whether the state statute's 'elements are the same as, or narrowed than, those of the generic offense.'" (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016)); *United States v. Rodriquez*, 747 F. App'x 93, 97 (3d Cir. 2018) ("As we do for crimes of violence, we use the categorical approach to determine whether a defendant's prior convictions qualify as controlled substance offenses."); *United States v. Glass*, 904 F.3d 319, 321–22 (3d Cir. 2018) (applying categorical approach to determine whether Pennsylvania drug conviction was a "controlled substance offense" under U.S.S.G. § 4B1.2(b)).

divisible where it provides alternative elements for a conviction and "thereby define[s] multiple crimes." *United States v. Henderson*, 841 F.3d 623, 627 (3d Cir. 2016) (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)).

Here, Defendant's 2012 marijuana conviction was under N.J.S.A. § 2C:35-5. That section provides:

> it shall be unlawful for any person knowingly or purposely:
>
> (1) To manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analog; or
>
> (2) To create, distribute, or possess or have under his control with intent to distribute, a counterfeit controlled dangerous substance.

*Id.* Paragraph (b) of the section contains 14 subsections with different punishments based on the type and amount of substance, rendering the statute divisible as to those 14 different offenses and, thus, subject to a "modified categorical" analysis. *See Lepianka v. Attorney General*, 586 F. App'x 869, 871 (3d Cir. 2014) ("However, because [N.J.S.A. § 2C:35-5] covers 'distinct offenses carrying separate penalties,' some of which, by their elements, are crimes of violence, the Court may turn to the modified categorical approach."); *Mass v. United States*, No. 11-2407, 2014 WL 6611498, at *7 (D.N.J. Nov. 20, 2014) (applying modified categorical approach to determine whether conviction under N.J.S.A. § 2C:35-5 qualified as a predicate offense for career offender enhancement under the Sentencing Guidelines).

Because N.J.S.A. § 2C:35-5 is divisible and, therefore, the modified categorical approach applies, the Court "may look to the charging document, the plea agreement, the transcript of the plea colloquy in which the defendant confirmed the factual basis for the plea, or to some comparable judicial record to determine the nature of the offense to which the defendant pled." *Marte v. Att'y Gen.*, 339 F. App'x 265, 267 (3d Cir. 2009) (citing *Shepard v. United States*, 544

U.S. 13, 26 (2005); *see also United States v. Abbott*, 748 F.3d 154, 159 (3d Cir. 2004) ("After the court determined that the modified categorical approach was proper, it looked to the charging document to determine which alternative element had been proved. This was proper under *Shephard v. United States*, 544 U.S. 13, 26 (2005)."). Once the court determines the specific crime of conviction, "the sentencing court then resorts to the traditional 'categorical approach' that requires comparing the criminal statute to the relevant generic offense." *See United States v. Peppers*, 899 F.3d 211, 232 (3d Cir. 2018) (citing *Mathis*, 136 S. Ct. at 2249). Here, Defendant has provided the Court with the charging document and judgment of conviction for his 2012 state court marijuana conviction. These documents confirm that Defendant was convicted under N.J.S.A. §§ 2C:35-5(a)(1) and (b)(11). Having determined the specific crime of conviction, I turn to next turn to the categorical approach and compare N.J.S.A. §§ 2C:35-5(a)(1) and (b)(11) to the Guidelines' definition of "controlled substance offense."

### b. *Identifying the Elements*

"A state conviction cannot qualify as a 'controlled substance offense' if its elements are broader than those listed in § 4B1.2(b)." *Glass*, 904 F.3d at 321. When identifying the elements of the predicate offense, the court "look[s] to the elements of the state statute as it existed at the time of the prior conviction." *United States v. Dahl*, 833 F.3d 345, 354 (3d Cir. 2016).

The version of section 2C:35-5(a)(1) in effect in 2012 provided that

> It shall be unlawful for any person knowingly or purposely:
>
> (1) To manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analog.

Paragraph (b) of that section set forth different punishments based on the type of substance involved in the offense. *See* N.J. Stat. Ann. § 2C:35-5(b). Relevant here, paragraph (b)(11) provided that

7

> Any person who violates subsection a. with respect to
>
> (11) Marijuana in a quantity of one ounce or more but less than five pounds including any adulterants or dilutants, or hashish in a quantity of five grams or more but less than one pound including any adulterants or dilutants, is guilty of a crime of the third degree.

N.J. Stat. Ann. § 2C:35-5(b)(11). The only element at issue is the definition of the controlled substance, "marijuana." At the time of Defendant's conviction, New Jersey defined "marijuana" as follows:

> [A]ll parts of the plant Genus Cannabis L., whether growing or not; the seeds thereof, and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds, except those containing resin extracted from the plant; but shall not include the mature stalks of the plant, fiber produced from the stalks, oil, or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of mature stalks, fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination.

N.J.S.A. § 2C:35-2 (effective March 12, 2003 to November 20, 2018).

The Court then looks to the corresponding federal offense. *Singh v. Att'y Gen.*, 839 F.3d 273, 284–85 (3d Cir. 2016). Again, U.S.S.G. § 2K2.1(a)(4)(A) adopts the definition of "controlled substance offense" set forth in U.S.S.G. § 4B1.2(b). Under U.S.S.G. § 4B1.2(b):

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

The Guidelines, however, do not define "controlled substance." Based on this ambiguity, a split in authority amongst the Circuit Courts has emerged. *See United States v. Ruth*, 966 F.3d 642, 653 (7th Cir. 2020) (observing that circuit split exists on issue of the definition of "controlled substance" under U.S.S.G. § 4B1.2(b)); *United States v. Sheffey*, 818 F. App'x 513, 520 (6th Cir. 2020) (noting "split among the circuits concerning whether the career offender enhancement's

8

reference to 'controlled substance' is defined exclusively by federal law and the Controlled Substances Act").

### i. *Survey of Case Law*

The Second, Fifth, Eighth, Ninth, and Tenth Circuits have construed "the term 'controlled substance' as used in the Guidelines to mean a substance listed in the Controlled Substances Act ("CSA"), 21 U.S.C. § 801, *et seq.*"[5] *See United States v. Bautista*, 989 F.3d 698, 702–03 (9th Cir. 2021); *United States v. Townsend*, 897 F.3d 66, 71 (2d Cir. 2018) (applying the *Jerome* presumption to hold that "a 'controlled substance' under § 4B1.2(b) must refer exclusively to those drugs listed under federal law—that is, the CSA"); *United States v. Gomez-Alvarez*, 781 F.3d 787, 794–95 (5th Cir. 2015); *United States v. Sanchez-Garcia*, 642 F.3d 658, 661 (8th Cir. 2011); *see also United States v. Abdeljawad*, 794 F. App'x 745, 748–49 (10th Cir. 2019).[6]

For example, in *Townsend*, the Second Circuit explained that "[a]s a general rule, commonly called the *Jerome* presumption, the application of a federal law does not depend on a state law unless Congress plainly indicates otherwise." 897 F.3d at 71 (citing *Jerome v. United States*, 318 U.S. 101, 104 (1943)). The *Townsend* court observed that the *Jerome* presumption

---

[5] In *United States v. Abdulaziz*, 998 F.3d 519 (1st Cir. 2021), the First Circuit held that the defendant's prior conviction of possession of marijuana did not constitute a "controlled substance offense" under the Guidelines because the Massachusetts definition of marijuana, at the time the defendant was convicted, was broader than the current federal definition. In applying the categorical approach, the First Circuit observed that "the government agrees with Abdulaziz (given the arguments that it has timely made to us) that a 'controlled substance' in § 4B1.2(b) was defined as of that time by reference to whether a substance was either included in or excluded from the drug schedules set forth in the federal [CSA]." *Id.* at 523. The Government contends that *Abdulaziz* should not affect the Court's decision here because, in that case, the Government failed to timely raise its argument that the term "controlled substance" does not refer only to those substances listed in the CSA's drug schedules. *See Abdulaziz*, 998 F.3d at 523 & n.2. While the Government is correct that the question of how "controlled substance" is defined was not squarely presented to, or addressed by, the *Abdulaziz* court, the First Circuit's decision remains persuasive.

[6] The Tenth Circuit has yet to address this question in a precedential opinion.

applies to the Sentencing Guidelines because they "are given the force of law and arguably have an even greater need for uniform application." *Id.* In that regard, the court explained that

> [S]ince *Jerome* was decided the Supreme Court has rejected attempts to impose enhanced federal punishments on criminal defendants in light of a state conviction, when those attempts do not also ensure that the conduct that gave rise to the state conviction justified imposition of an enhancement under a uniform federal standard. These decisions reinforce the idea that imposing a federal sentencing enhancement under the Guidelines requires something more than a conviction based on a state's determination that a given substance should be controlled.
>
> In light of the above, we are confident that federal law is the interpretive anchor to resolve the ambiguity at issue here. Any other outcome would allow the Guidelines enhancement to turn on whatever substance "is illegal under the particular law of the State where the defendant was convicted," a clear departure from *Jerome* and its progeny. Thus, a "controlled substance" under § 4B1.2(b) must refer exclusively to those drugs listed under federal law—that is, the CSA.

*Id.* (citations omitted).

The Fifth, Eighth, and Ninth Circuits have employed similar reasoning to find that the term "controlled substance" in the definition "drug trafficking offense" in U.S.S.G. § 2L1.2[7]—which sets forth a definition nearly identical to that of "controlled substance offense" under section 4B1.2(b)—is defined by the CSA. *See Gomez-Alvarez*, 781 F.3d at 793–94; *United States v. Leal-Vega*, 680 F.3d 1160 (9th Cir. 2012). For example, in *Leal-Vega*, the Ninth Circuit explained that:

> While the word "controlled" may have a plain and ordinary meaning, whether a substance is "controlled" must, of necessity, be tethered to some state, federal or local law in a way that is not true of the definition of "counterfeit." To construe the term "controlled" as the Government urges would require the Sentencing Guidelines

---

[7] "Drug trafficking offense" is defined as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." § 2L1.2, Application Note 2.

10

> to take into account the substances that individual states "control." This would be contrary to the goal of the Sentencing Guidelines to seek "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders."

*Leal-Vega*, 680 F.3d at 1167 (quoting U.S.S.G., Ch. One, Pt. A). As such, the *Leal-Vega* court held that "[i]n order to effectuate the goal set forth in *Taylor*[8] of arriving at a national definition to permit uniform application of the Sentencing Guidelines, we hold that the term 'controlled substance,' as used in the 'drug trafficking offense' definition in U.S.S.G. § 2L1.2, means those substances listed in the CSA." *Id.* In *Bautista*, the Ninth Circuit held that its decision in *Leal-Vega* "compel[led] the conclusion that 'controlled substance' in § 4B1.2(b) refers to a 'controlled substance' as defined in the CSA." *Bautista*, 989 F.3d at 702.

On the other hand, the Fourth, Sixth, Seventh, and Eleventh Circuits define "controlled substance" as any substance controlled under federal law *and* substances controlled under state law. *See United States v. Ward*, 972 F.3d 364, 371 (4th Cir. 2020); *Ruth*, 966 F.3d at 654; *United States v. Pridgeon*, 853 F.3d 1192, 1198 (11th Cir. 2017); *United States v. Smith*, 681 F. App'x 483 (6th Cir. 2017). Emblematic of this approach is the Fourth Circuit's decision in *Ward*. There, the defendant challenged the application of a career-offender enhancement under section 4B1.1(a)

---

[8]   In *Taylor v. United States*, 495 U.S. 575, 577–78 (1990), the Supreme Court was called upon to determine the meaning of the word "burglary" as used in 18 U.S.C. § 924(e), which "provides a sentence enhancement for a defendant who is convicted under 18 U.S.C. § 922(g) (unlawful possession of a firearm) and who has three prior convictions for specified types of offenses, including 'burglary.'" The Court held that in setting forth those predicate crimes, Congress referred to their generic definitions, as opposed to their varying definitions under the law of each state. *Id.* at 598. In so holding, the Supreme Court observed that Congress "intended that the enhancement provision [of section 924(e)] be triggered by crimes having certain specified elements, not by crimes that happened to be labeled 'robbery' or 'burglary' by the laws of the State of conviction." *Id.* at 588–89. Further, the *Taylor* court held that in determining whether a defendant's prior conviction constitutes a predicate offense under section 924, courts should apply a "categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Id.* at 600–01.

11

based on two prior convictions for possession with the intent to distribute heroin. *Ward*, 972 F.3d at 367. The *Ward* defendant argued that "because Virginia law defines controlled substances more broadly than federal law, his Virginia conviction does not trigger the career-offender enhancement." *Id.* Applying the categorical approach, the *Ward* court explained that it would determine whether the elements of the Virginia law of conviction and the criteria of the Guidelines "categorically match." *Id.* at 369. In that connection, the Fourth Circuit applied a "plain meaning" approach to define "controlled substance" in section 4B1.2(b) as "any type of drug whose manufacture, possession, and use is regulated by law." *Id.* at 371.

Based on that approach, the court concluded that, although Virginia law regulates a greater number of substances than federal law, it categorically satisfies the requirements of section 4B1.2(b). The *Ward* court went on to reject the defendant's position that "controlled substance" should be defined in accordance with the CSA, explaining:

> As described above, Ward's argument ignores the plain meaning of § 4B1.2(b). A predicate offense arises under either "federal or state law" if it satisfies the two criteria: (1) the offense is punishable by at least one year's imprisonment; and (2) the law prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or the possession with the intent to do so). And, as we described, to determine whether the offense meets the first criterion, we look to the law of the jurisdiction of the conviction. We do not look to an analogous federal statute to determine whether a state offense is punishable by more than one year in prison. Nor do we look to a federal statute to determine whether the offense satisfies the second criterion. Where a defendant is convicted under a state statute, we look to see how the state law defining that offense defines the punishment and the prohibited conduct (*e.g.*, distribution of a controlled substance).

*Id.* at 372. Moreover, the circuit concluded that the *Jerome* presumption was overcome because the Sentencing Commission "has specified that we look to *either* the federal or state law of conviction to define whether an offense will qualify." *Id.* at 374.

The Third Circuit has not yet had occasion to consider this issue. Nevertheless, two Middle

12

District of Pennsylvania courts have adopted the majority approach and found that "controlled substance" refers only to those substances listed in the CSA. *See, e.g.*, *United States v. Jamison*, 502 F. Supp. 3d 923 (M.D. Pa. 2020); *United States v. Miller*, 480 F. Supp. 3d 614 (M.D. Pa. 2020). Both *Miller* and *Jamison* found the reasoning of the majority of circuits more persuasive because it preserved uniformity in sentencing  *See Jamison*, 502 F. Supp. 3d at 929 ("To be sure, a state may define a "controlled substance" more broadly than federal law, but we do not believe that necessarily means that federal sentencing must follow suit. As was noted by both the circuit courts and by Judge Conner, we find that uniformity in federal sentencing is vital."); *Miller*, 480 F. Supp. 3d at 620–21 ("We agree that uniformity in federal sentencing is paramount, particularly with respect to application of the career-offender enhancement. Indeed, it is one of the primary goals of the Guidelines."). Moreover, the *Miller* and *Jamison* courts "concurred with *Leal-Vega* that 'controlled substance'—unlike 'counterfeit substance'—is a term of art that simply is not susceptible to an ordinary commonly understood meaning untethered to a statute; rather, whether a substance is in fact 'controlled' necessarily depends on the existence of a local, state, or federal law deeming is so." *Miller*, 480 F. Supp. 3d at 620–21; *see also Jamison*, 502 F. Supp. 3d at 929–30. Armed with these decisions, I turn to the Government's arguments.

### ii. *Defining Controlled Substance*

Following the reasoning in the minority of circuits, the Government first contends that the term "controlled substance" should be given its "plain and ordinary meaning" of "any type of drug whose manufacture, possession, and use is regulated by law." (Gov't Br., at 10 (quoting *Ward*, 972 F.3d at 371).) In that connection, the Government reasons that because the language of section 4B1.2(b) is disjunctive, *i.e.*, it refers to federal *or* state law, it must mean that a drug controlled under federal law or a drug controlled under state law qualifies as a "controlled substance." I am not persuaded by that approach.

13

To begin, it is well established that courts "should interpret undefined terms in the guidelines, as in statutes, using the terms' meaning in ordinary usage." *United States v. Loney*, 219 F.3d 281, 284 (3d Cir. 2000).  Put differently, "nontechnical words and phrases" are given "their ordinary meaning." *Smith v. United States*, 508 U.S. 223, 242 (1993) (Scalia, J., dissenting).  But, the term "controlled substance," as used in section 4B1.2(b), "is a term of art that necessarily refers to a set of substances subject to the control of some government."  *Ward*, 972 F.3d at 379 (Gregory, C.J., concurring); *see also Gonzales v. Oregon*, 546 U.S. 243, 259–60 (2006) ("Control is a term of art in the CSA.").  Chief Judge Gregory, in his concurring opinion in *Ward*, explained why it is illogical to define "controlled substance" based on its ordinary meaning:

> As a passive past participle, the word requires us to answer the question: controlled by whom? The majority attempts to provide an answer to this question by stating "the ordinary meaning" or "controlled substance, is *any type of drug* whose manufacture, possession, and use is *regulated by law*." But that begs the question: which law? The choice is between a uniform federal definition, on the one hand; or individual, inconsistent state definitions on the other.

*Ward*, 972 F.3d at 379 (Gregory, C.J., concurring) (citation omitted).  In other words, "defining the term 'controlled substance' to have its ordinary meaning of a drug regulated by law would make what offenses constitute a drug offense necessarily depend on the state statute at issue." *Leal-Vega*, 680 F.3d at 1166.  It would, therefore, be antithetical to the goals of the Sentencing Guidelines to seek uniformity in sentencing to require that the Guidelines "take into account the substances that the individual states 'control.'" *Id.* at 1167.[9]

---

[9] The Government contends that, if the Court were to adopt Defendant's definition of "controlled substance," it follows that the term, "wherever used in federal law . . . , [would] always mean[] 'controlled substance (as defined in section 802 of Title 21).'" (Gov't Br., at 15.) In that connection, the Government highlights that the Immigration and Nationality Act, in defining prior convictions that may subject a defendant to deportation, limits the term "controlled substance" to "a controlled substance (as defined in section 802 of Title 21)." (*Id.* (quoting 8 U.S.C. § 1101(a)(43)(B).)  As such, the Government posits that Defendant's proposed definition of

14

Moreover, the Government's approach, based on the apparent disjunctive nature of the Guidelines' definition of controlled substance offense, lacks grammatical support. While the Government hones in on the phrase "federal or state law," it does not take into account the particular placement in the definition. Rather than modify "controlled substance," section 4B1.2(a) provides that a "controlled substance offense" means "[a]n offense *under federal or state law* . . . that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with the intent to manufacture, import, export, distribute or dispense." Plainly, "[a]lthough a 'controlled substance offense' includes an *offense* 'under state or federal law,' that does not mean that the *substance* at issue may be controlled under federal or state law." *Townsend*, 897 F.3d at 70. Indeed, if "controlled substance offense" were intended to include offenses involving substances that are controlled under both federal and state law, "the definition should read ' . . . a controlled substance *under federal or state law*.'" *Id.* The provision, however, is not phrased in that fashion.

Further supporting application of the CSA's definition of "controlled substance" to section 4B1.2(b) is the *Jerome* presumption. In *Jerome v. United States*, 318 U.S. 101, 104 (1941), the Supreme Court explained that federal courts "must generally assume, in the absence of a plain indication to the contrary, that Congress when it enacts a statute is not making the application of the federal act dependent on state law."[10] Specifically, the *Jerome* court highlighted that "[w]hen

---

"controlled substance," "would impermissibly render the limiting phrase '(as defined in section 802 of Title 21)' useless surplusage in the INA." (*Id.*) I do not agree. The Court's interpretation of the term "controlled substance," as used in U.S.S.G. §§ 2K2.1(a)(4)(A) and 4B1.2, applies solely to those sections, not generally to the United States Code.

[10]   The Government does not argue that the *Jerome* presumption should not apply to the Sentencing Guidelines, which are not a federal statute. Indeed, the Court is not aware of any decision holding that the *Jerome* presumption should not be applied to the Guidelines. The Guidelines "are given the force of law and arguably have an even greater need for uniform application," demonstrating that the *Jerome* presumption should apply equally to the Guidelines.

15

it comes to federal criminal laws . . . , there is a consideration in addition to the desirability of uniformity in application which supports the general principle": "where Congress is creating offenses which duplicate or build upon state law, courts should be reluctant to expand the defined offenses beyond the clear requirements of the terms of the statute." *Id.* at 104–05.  In that regard, the Third Circuit has explained that "[n]ot every statutory scheme requires a uniform federal rule." *Laird v. I.C.C.*, 691 F.2d 147, 153 (3d Cir. 1982).

The Government maintains that the *Jerome* presumption is overcome because the phrasing of section 4B1.2(b) demonstrates that courts should "look to *either* the federal or state law of conviction to define whether an offense will qualify." (Gov't Br., at 29 (quoting *Ward*, 972 F.3d at 374).)  The Government's argument in this regard piggybacks on its position regarding the plain meaning of the Guidelines, with which I disagreed.  *See supra.*  As I reasoned, the Guidelines do not plainly indicate that the Sentencing Commission intended courts to rely on state law to define "controlled substance."  Indeed, "[w]here as here, there is ambiguity on how to interpret the Guidelines, federal law must be our interpretative anchor." *Ward*, 972 F.3d at 381 (Gregory, C.J., concurring).  That is particularly apt in the context of the Guidelines, whose animating principle is uniformity in sentencing.  *See Hughes v. United States*, 138 S. Ct. 1765, 1774 (2018) ("A principal purpose of the Sentencing Guidelines is to promote 'uniformity in sentencing imposed by different federal courts for similar criminal conduct.'" (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1342 (2016))); *see also* U.S.S.G., Ch. 1, Pt. A(1)(3) (observing that "Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in

---

*Townsend*, 897 F.3d at 71; *United States v. Savin*, 349 F.3d 27, 35 (2d Cir. 2003) ("Absent a plain indication to the contrary, the Guidelines should be applied uniformly to those convicted of federal crimes irrespective of how the victim happens to be characterized by its home jurisdiction."). Indeed, even courts in the minority circuits have assumed that the *Jerome* presumption applies to the Sentencing Guidelines, without much dispute. *Ward*, 972 F.3d at 374 ("Assuming the Jerome presumption should be applied to Guidelines promulgated by the Sentencing Commission . . . .").

16

sentences imposed for similar criminal offenses committed by similar offenders"). As a matter of policy, the Supreme Court "has rejected attempts to impose enhanced federal punishments on criminal defendants in light of a state conviction, when those attempts do not also ensure that the conduct that gave rise to the state conviction justified the imposition of an enhancement under a uniform federal standard." *See Townsend*, 897 F.3d at 71; *see also Esquival-Quintana v. Sessions*, 137 S. Ct. 1562, 1570 (2017); *Taylor*, 495 U.S. at 579, 590–91. These decisions "reinforce the idea of imposing a *federal* sentencing enhancement under the Guidelines requires something more than a conviction based on a state's determination that a given substance should be controlled." *Townsend*, 89 F.3d at 71; *see also Leal-Vega*, 680 F.3d at 1165 (observing that "the "underlying theory of *Taylor* [and the categorical approach] is that a national definition of the elements of a crime is required so as to permit uniform application of federal law in determining the federal effect of prior convictions" (quoting *Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1157–58 (9th Cir. 2008))). Indeed, as the *Miller* court keenly explained, "[t]he severe consequences of career-offender classification should not be contingent on a particular state's decision regarding which substances to control." *Miller*, 480 F. Supp. 3d at 620–21. If the Court were to adopt the Government's definition of "controlled substance," a defendant could face an enhancement of his federal sentence for conduct that is not illegal under federal law. Such an outcome contravenes the underlying intent of the Sentencing Guidelines, and worse, it stymies the uniformity that the Guidelines seek to achieve. *See Townsend*, 897 F.3d at 71 ("[W]e are confident that federal law is the interpretative anchor to resolve the ambiguity at issue here. Any other outcome would allow the Guidelines enhancement to turn on whatever substance 'is illegal under the particular law of the State where the defendant was convicted,' a clear departure from *Jerome* and its progeny.").

In sum, I find that the term "controlled substance," as used in section 4B1.2(b) and referred to in section 2K2.1(a)(4)(A), are those substances defined section 802 of the CSA. Adopting this

17

definition ensures uniformity in sentencing and protects defendants from receiving enhanced sentences based on "a particular state's decision regarding which substances to control." *Miller*, 480 F. Supp. 3d at 620.

### c. Categorical Comparison of the Elements

Finally, having determined that "controlled substance" refers to those substances set forth in section 802 of the CSA, the Court must compare the definitions of marijuana under federal and New Jersey law to determine if Defendant's 2012 conviction is a predicate offense under section 2K2.1(a)(4)(A). In making this comparison, the relevant version of the state statute is that which was in effect at the time of the prior conviction. *See United States v. Ramos*, 892 F.3d 599, 607 (3d Cir. 2018); *Dahl*, 833 F.3d at 354 (3d Cir. 2016). The relevant version of the federal statute, however, is that in effect on the date the defendant is sentenced.[11] *See* U.S.S.G. § 1B1.11 ("The Court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."); *see also Abdulaziz*, 998 F.3d at 527–28; *Bautista*, 989 F.3d at 703–04. That is because, "[a] guideline's enhancement for a defendant's past criminal conduct . . . is reasonably understood to be based in no small part on a judgment about how problematic that past conduct is when viewed at the time

---

[11] The Third Circuit's decision in *Martinez v. Attorney General*, 906 F.3d 281 (3d Cir. 2018), does not require the Court to refer to the CSA in effect at the time of Defendant's conviction. In *Martinez*, the Third Circuit held that, in the context of immigration removal proceedings, courts must compare the state and federal drug schedules as both existed on the date of the prior state conviction. *Id.* at 287. In so holding, the *Martinez* court relied on the Second Circuit's decision in *Doe v. Sessions*, in which the Second Circuit explained that the time of conviction analysis is necessary because it "provides both the Government and the alien with maximum clarity at the point at which it is most critical for an alien to assess (with aid from his defense attorney) whether 'pending criminal charges may carry a risk of adverse immigration consequences.'" 866 F.3d 203, 210 (2d Cir. 2018). That concern, however, is not relevant here. Indeed, "[t]here is no similar concern in this context given both the gap in time that necessarily exists between the prior conviction and any consequence under § 2K2.1(a)(2) that is attributable to it and the highly contingent nature of that consequence, as it results only if a defendant commits a new crime." *Abdulaziz*, 998 F.3d at 531. In any event, at sentencing, the Government expressly waived any argument that the Court's analysis should be governed by the version of the CSA in effect at the time of Defendant's conviction, as opposed to that in effect at the time of sentencing.

18

of the sentencing itself." *Abdulaziz*, 998 F.3d at 528.

Currently, section 802(16)(A) of the federal CSA, defines "marihuana" as "all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin." 21 U.S.C. § 802(16)(A). Further, the definition of "marihuana" explicitly excludes hemp, defined as the "plant Cannabis sativa L. and any part of that plant" with a THC "concentration of not more than .3 percent on a dry weight basis." *Id.* § 802(16)(B)(i); 7 U.S.C. § 1639*o*(1) (defining "hemp"). Plainly, and not disputed by the Government, the relevant definition of marijuana under New Jersey law is broader than its federal counterpart because, at the time of Defendant's conviction, the New Jersey definition of marijuana did not exclude hemp. Accordingly, utilizing the categorical approach, because an element of the "state crime sweeps more broadly than the federal offense," Defendant's 2012 conviction for possession with intent to distribute marijuana in violation of N.J.S.A. § 2C:35-5 cannot qualify as a "controlled substance offense" under U.S.S.G. §§ 2K2.1(a)(4)(A) and 4B1.2(b). *See Glass*, 904 F.3d at 321.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Defendant's prior conviction for third-degree possession of marijuana with intent to distribute, in violation of N.J. Stat. Ann. § 2C:35-5a(1), b(11), does not qualify as a controlled substance offense under U.S.S.G. § 2K2.1(a)(4)(A), and thus, that base-level sentencing enhancement does not apply.

DATED: August 10, 2021                        /s/ Freda L. Wolfson
                                              Freda L. Wolfson
                                              U.S. Chief District Judge